

## Notice of Service of Process

**null / ALL**
**Transmittal Number: 20674058**
**Date Processed: 11/11/2019**

| | |
|---|---|
| Primary Contact: | Marti Cornwell<br>UNUM Group<br>1 Fountain Sq<br>Dept (7N200<br>Chattanooga, TN 37402-1307 |
| Electronic copy provided to: | Janna Thomas<br>Jen Majic<br>Judy Drake |

| | |
|---|---|
| Entity: | UNUM Life Insurance Company Of America<br>Entity ID Number  2979591 |
| Entity Served: | UNUM Life Insurance Company of America |
| Title of Action: | Gregory Swift vs. Unum Life Insurance Company of America |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Hardin County Circuit Court, KY |
| Case/Reference No: | 19-CI-01707 |
| Jurisdiction Served: | Kentucky |
| Date Served on CSC: | 11/08/2019 |
| Answer or Appearance Due: | 20 Days |
| Originally Served On: | CSC |
| How Served: | Certified Mail |
| Sender Information: | Michael M. Pitman<br>270-753-1694 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

| AOC-E-105   Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice   *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **19-CI-01707**<br>Court:   **CIRCUIT**<br>County: **HARDIN** |

*Plantiff,* **SWIFT, GREGORY VS. UNUM LIFE INSURANCE COMPANY OF AMERICA**, *Defendant*

TO: **CORPORATION SERVICE COMPANY**
**421 WEST MAIN STREET**
**FRANKFORT, KY 40601**

Memo: Related party is UNUM LIFE INSURANCE COMPANY OF AMERICA

The Commonwealth of Kentucky to Defendant:
**UNUM LIFE INSURANCE COMPANY OF AMERICA**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Loretta Crady*

Hardin Circuit Clerk
Date: **11/4/2019**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20_____      _____
                                                                    Served By

                                                                    _____
                                                                    Title

Summons ID: 201534114344690@00000320364
CIRCUIT: 19-CI-01707 Certified Mail
SWIFT, GREGORY VS. UNUM LIFE INSURANCE COMPANY OF AMERICA

   Page 1 of 1

*eFiled*

Presiding Judge: HON. KEN HOWARD (609287)

Package:000002 of 000072

Package : 000002 of 000072

COMMONWEALTH OF KENTUCKY
HARDIN CIRCUIT COURT
CIVIL ACTION NO. 19-_____

GREGORY SWIFT                                                     PLAINTIFF

VS.                                 COMPLAINT

UNUM LIFE INSURANCE COMPANY OF
AMERICA                                                          DEFENDANT

       SERVE BY CERTIFIED MAIL, RESTRICTED
DELIVERY, RETURN RECEIPT REQUESTED

           Corporation Service Company
421 West Main Street
Frankfort, KY 40601

And

SERVE:

           Kentucky Secretary of State
152 State Capitol
700 Capitol Avenue
Frankfort, KY 40601-3493

           For Service by Certified Mail,
Return Receipt Requested on:

           Corporation Service Company
421 West Main Street
Frankfort, KY 40601

       Plaintiff, Gregory Swift, for his Complaint against Defendant, Unum Life

Insurance Company of America, states as follows:

Package:000003 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000003 of 000072

<div style="float:right">Package:000004 of 000072</div>

<div style="float:right">Presiding Judge: HON. KEN HOWARD (609287)</div>

<div style="float:right">Package : 000004 of 000072</div>

## PARTIES

1.      Plaintiff, Gregory Swift, is and at all times relevant to this action has been a citizen and resident of the Commonwealth of Kentucky residing at 775 Churchill Bland Lane, Glendale, Hardin County, Kentucky 42740;

2.      Defendant, Unum Life Insurance Company of America (hereinafter referred to as "Unum") is and at all times relevant to this action is believed to have been an insurance company organized under the laws of the state of Maine with a principal place of business at 2211 Congress Street, Portland, Maine 04122.  Unum, as a foreign insurance company, is authorized to do business in the Commonwealth of Kentucky.  Service of process may be effected by the Clerk of this Court issuing a summons and serving the summons together with a true and correct copy of the Complaint by certified mail, restricted delivery, return receipt requested on Unum's process agent, Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.  In addition, pursuant to KRS 304.3-230, Unum as a non-resident insurance company is deemed to have appointed the Secretary of State of the Commonwealth of Kentucky as its agent for service of process. Accordingly, pursuant to KRS 304.3-230(5), the Clerk of this Court may effect service of process by serving, by certified mail, return receipt requested, two (2) true copies of the summons accompanied by two (2) attested copies of the Complaint to the Commonwealth of Kentucky Secretary of State, 152 State Capitol, 700 Capitol Avenue, Frankfort, Kentucky 40601-3493.  The Secretary of State shall immediately mail a copy of the summons and Complaint to the Defendant's process agent, Corporation Service Company at 421 West Main Street, Frankfort, KY 40601. The letter shall be posted by prepaid certified mail, return receipt requested and shall bear the return address of the Secretary of State. The

2

Secretary of State shall then make return to the Court showing that the acts contemplated by the statute have been performed, and shall attach to the return the registry receipt, if any. The summons shall be deemed to be served upon return from the Secretary of State.

## JURISDICTION AND VENUE

3.      This action is filed seeking benefits under a policy of insurance issued by Unum providing benefits to the Plaintiff.  The Plaintiff resides in Hardin County, Kentucky.  The breach of the policy by the Defendant, Unum, occurred in Hardin County, Kentucky.  The amount in controversy exceeds the minimum jurisdictional limitations of this Court.

## FACTUAL BACKGROUND

4.      Plaintiff incorporates by reference the allegations set forth in numerical paragraphs 1 through 3 above as if fully set out herein.

5.      Plaintiff is a 61-year old citizen and resident of Hardin County, Kentucky.

6.      Plaintiff was previously an employee of and presently has an ownership interest in a business known as Swift Roofing, Inc.

7.      In Plaintiff's capacity as an employee of Swift Roofing, Inc., Plaintiff was covered under a policy of long-term disability insurance issued by Unum.  A copy of the policy is attached hereto marked **Exhibit A**.

8.      Plaintiff was diagnosed with squamous cell carcinoma.  As a result of this diagnosis, Plaintiff submitted an application for disability benefits under the policy issued by Unum.

3

Package:000005 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000005 of 000072

9.      Plaintiff was awarded short-term disability benefits and, on or about

January 30, 2018, was awarded long-term disability benefits under the Unum policy.

Plaintiff has been unable to engage in the substantial duties of his employment with his

employer, Swift Roofing, Inc., at all times on and after January 1, 2018.

10.      Unum provided long-term disability benefits to the Plaintiff under the

policy through March 27, 2019.  At that time, Unum denied further benefits to the Plaintiff

asserting that the Plaintiff no longer met the eligibility provisions under the Unum policy

for long-term disability benefits.  Specifically, Unum asserted that Plaintiff did not meet the

disability eligibility rules under the theory that Plaintiff did not sustain an adequate

percentage loss of income.

11.      Plaintiff appealed Unum's initial decision dated April 11, 2019.  In his

appeal, the Plaintiff asserted that Unum incorrectly applied the terms and provisions of the

policy in determining the Plaintiff's "monthly disability earnings".  Plaintiff's appeal dated

July 30, 2019 is attached hereto marked **Exhibit B**.

12.      Pursuant to the policy issued by Unum, the long-term disability

benefits are afforded if an individual is determined to be disabled.  The policy provides, in

pertinent part, as follows:

### Disability Policy Terms

Pursuant to the policy issued by Unum, the long-term disability benefits are
afforded if an individual is determined to be disabled.  The policy provides, in
pertinent part, as follows:

You are disabled when Unum determines that:

You are limited from performing the
material and substantial duties of your

4

Package:000006 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000006 of 000072

regular occupation due to your sickness
or injury; and

You have a 20% or more loss in your
indexed monthly earnings due to the
same sickness or injury.

The policy provides, with regard to calculation of monthly earnings, the
following:

"Monthly earnings" means your average monthly
income from your Employer just prior to your
date of disability and is computed based on the
sum of your Schedule K-1 and W-2 income
averaged over the lesser of:

a.  The three most recent tax years (36
    months); or
b.  The period that you have been an
    owner, if you have been an owner for
    less than three years.

Schedule K-1 income is derived from the line
that refers to "ordinary income (loss) from trade
or business activities" received from your
Employer.

13.   With regard to termination of benefits, the plan provides:

When will payments stop?

We will stop sending you payments and your
claim will end on the earliest of the following:

...

-if you are working and your monthly disability
earnings exceed 80% of your indexed monthly
earnings, the date your earnings exceed 80%....

On and after January 1, 2018, Plaintiff was not working and has not worked.

14.   The plan definitions, in the glossary section, define the following

terms applicable to long-term disability coverage:

5

Package:000007 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000007 of 000072

> "Disability earnings" means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your maximum capacity;

> "Monthly earnings" means your gross monthly income from your Employer as defined in the plan.

15.     The policy provides that monthly disability payments will end at the point in time an individual's "monthly disability earnings"[1] exceed 80% of the indexed monthly earnings.  Specifically, under the provision of the policy dealing with termination of disability benefits, the policy states:

> We will stop sending you payments and your claim will end on the earliest of the following:

> ... if you are working and your monthly disability earnings exceed 80% of your indexed monthly earnings, the date your earnings exceed 80%.

16.     Prior to November 2017, Plaintiff was actively employed by and working for Swift Roofing, Inc. Due to his medical condition, Plaintiff was and has remained unable to continue working with Swift Roofing, Inc., on and after November 1, 2017. Plaintiff has not worked since November 1, 2017.

17.     For the entire calendar year of 2018 and to the present, payments received by Plaintiff were issued on a K-1 and represented passive return on an ownership interest and investment in the corporation known as Swift Roofing, Inc.

---

[1] "Disability earnings" are defined to mean earnings received when an individual is both disabled *and working*.

6

Package:000008 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000008 of 000072

18.    The payments to the Plaintiff from January 1, 2018 to the present did not reflect any work performed by the Plaintiff and, as a result, were incorrectly calculated and used by Unum to disallow the Plaintiff's long-term disability benefits.

19.    Unum, on August 29, 2019, acknowledged the receipt of the Plaintiff's appeal. In the decision, Unum determined that Plaintiff did not experience an earnings loss as required by the policy and did not have a 20% loss in monthly earnings. As a result, Unum asserts that the Plaintiff did not meet the definition of disability and is not eligible for the long-term disability benefits. A copy of Unum's final decision on Plaintiff's appeal is attached hereto marked **Exhibit C**. This denial of benefits was made even though Plaintiff was not working and has not returned to work since November 2017.

20.    In Unum's denial, Unum advised the Plaintiff that litigation can be commenced at any time prior to April 11, 2022 challenging Unum's decision.

<u>COUNT 1</u>

21.    Plaintiff incorporates the allegations set forth in numerical paragraphs 1 through 20 above as if fully set out herein.

22.    Plaintiff, at all times relevant to this action, has been an insured under the long-term disability policy issued by Unum.

23.    Plaintiff became disabled while an insured under the policy as a result of the diagnosis of squamous cell carcinoma.

24.    Unum has agreed that the Plaintiff meets the disability eligibility rules based upon his medical condition. Plaintiff has complied with the terms of and has submitted all documentation required under the policy with Unum.

7

Package:000009 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000009 of 000072

25.     Unum, in denying continuing Plaintiff's long-term disability benefits, asserts that Plaintiff does not meet the definition of disability as a result of Unum's determination that the Plaintiff has earnings after January 1, 2018 which do not meet the income loss provisions of the policy.

26.     Plaintiff asserts that the decision of Unum to deny disability benefits to the Plaintiff is not supported by and constitutes a breach of the policy of insurance issued by Unum providing benefits to the Plaintiff.  Specifically, Plaintiff asserts that any payments Plaintiff received from January 1, 2018 to the present do not constitute earnings or income.  Specifically, Plaintiff's payments received from January 1, 2018 to the present are simply a passive return on Plaintiff's ownership interest in Swift Roofing, Inc., and do not constitute earnings or income under the terms and provisions of the Unum policy.

27.     Plaintiff has and continues to meet the definition of disability under the policy as a result of a diagnosed sickness or injury.  Further, Plaintiff's disability benefits should not have been terminated by Unum since Plaintiff was not working and is presently and has remained entitled to benefits pursuant to the terms and provisions of the policy.

28.     Unum has breached the policy in refusing to provide long-term disability benefits to the Plaintiff based upon the application submitted.  Accordingly, Unum has acted in an arbitrary and capricious manner in denying benefits to the Plaintiff and has breached its contract with the Plaintiff.  Plaintiff is entitled to recover compensatory damages from Unum in an amount equal to all long-term disability benefits due under the policy retroactive the date of termination and, all long-term disability

Package:000010 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000010 of 000072

8

benefits due under the policy prospectively, during the period of time the Plaintiff remains

disabled.

   29.  Plaintiff asserts that the termination of disability benefits is not

supported by and constitutes a breach of the insurance contract issued by Unum.

Specifically, Plaintiff asserts that termination of disability benefits was improper due to the

fact that Plaintiff was not working at the time of termination.

   30.  The decision of Unum is arbitrary and capricious and is not supported

under the provisions of the policy.

   WHEREFORE, Plaintiff respectfully demands the following relief:

   1.  For compensatory damages under Count 1 in an amount equal to all

long-term disability benefits to which Plaintiff is entitled under the terms and provisions of

the Unum policy throughout the period of time that Plaintiff has been and remains

disabled;

   2.  For Plaintiff's costs and attorney fees incurred in this litigation;

   3.  For a trial by jury on all issues so triable; and

   4.  All other relief to which the Plaintiff may appear entitled.

        RESPECTFULLY SUBMITTED,

        HAVERSTOCK, BELL & PITMAN, LLP
        211 South 12th Street
        P.O. Box 1075
        Murray, KY 42071
        Phone:  (270) 753-1694
        Fax:     (270) 753-2053
        Email: mike@haverstocklaw.com

    BY: /s/ Michael M. Pitman
       MICHAEL M. PITMAN
    DATE: November 4, 2019

9

Package:000011 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000011 of 000072

Filed          19-CI-01707     11/04/2019          Loretta Crady, Hardin Circuit Clerk



**Swift Roofing, Inc**

**Your Group Disability Plan**

Policy No. 591301 021

Underwritten by Unum Life Insurance Company of America

1/13/2004

Package:000012 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000012 of 000072

EXHIBIT

A

# CERTIFICATE OF COVERAGE

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured.  You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English.  However, a few terms and provisions are written as required by insurance law.  If you have any questions about any of the terms and provisions, please consult Unum's claims paying office.  Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the policy (issued to the policyholder), the policy will govern.  Your coverage may be cancelled or changed in whole or in part under the terms and provisions of the policy.

The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.  When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

For purposes of effective dates and ending dates under the group policy, all days begin at 12:01 a.m. and end at 12:00 midnight at the Policyholder's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

CC.FP-1                    CC.FP-1   (1/1/2004)                      1

Package:000013 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000013 of 000072

Filed                    19-CI-01707        11/04/2019              Loretta Crady, Hardin Circuit Clerk

## TABLE OF CONTENTS

BENEFITS AT A GLANCE..................................................................B@G-STD-1

SHORT TERM DISABILITY PLAN.......................................................B@G-STD-1

BENEFITS AT A GLANCE..................................................................B@G-LTD-1

LONG TERM DISABILITY PLAN .........................................................B@G-LTD-1

CLAIM INFORMATION........................................................................STD-CLM-1

SHORT TERM DISABILITY ...............................................................STD-CLM-1

CLAIM INFORMATION........................................................................LTD-CLM-1

LONG TERM DISABILITY ..................................................................LTD-CLM-1

GENERAL PROVISIONS ....................................................................EMPLOYEE-1

SHORT TERM DISABILITY ...............................................................STD-BEN-1

BENEFIT INFORMATION....................................................................STD-BEN-1

OTHER BENEFIT FEATURES ............................................................STD-OTR-1

LONG TERM DISABILITY ..................................................................LTD-BEN-1

BENEFIT INFORMATION....................................................................LTD-BEN-1

OTHER BENEFIT FEATURES ............................................................LTD-OTR-1

OTHER SERVICES............................................................................SERVICES-1

ERISA ..............................................................................................ERISA-1

GLOSSARY ......................................................................................GLOSSARY-1

Package:000014 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000014 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

# BENEFITS AT A GLANCE

## SHORT TERM DISABILITY PLAN

This short term disability plan provides financial protection for you by paying a portion of your income while you are disabled. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**      January 1, 2004

**POLICY NUMBER:**      591301  021

**ELIGIBLE GROUP(S):**

> Management in active employment in the United States with the Employer

**MINIMUM HOURS REQUIREMENT:**

> Employees must be working at least 40 hours per week.

**WAITING PERIOD:**

> For employees in an eligible group on or before January 1, 2004:   None

> For employees entering an eligible group after January 1, 2004:  First of the month coincident with or next following 12 months of continuous active employment

**REHIRE:**

> If your employment ends and you are rehired within 12 months, your previous work while in an eligible group will apply toward the waiting period. All other policy provisions apply.

**CREDIT PRIOR SERVICE:**

> Unum will apply any prior period of work with your Employer toward the waiting period to determine your eligibility date.

**WHO PAYS FOR THE COVERAGE:**

> Your Employer pays the cost of your coverage.

**ELIMINATION PERIOD:**

> 7 days for disability due to an injury

> 7 days for disability due to a sickness

Benefits begin the day after the elimination period is completed.

**WEEKLY BENEFIT:**

> 60% of weekly earnings to a maximum benefit of $500 per week

> **Your payment may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered under this plan.**

B@G-STD-1   (1/1/2004)                                    3

Package:000015 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000015 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

**MAXIMUM PERIOD OF PAYMENT:**

12 weeks

Premium payments are required for your coverage while you are receiving payments under this plan.

Your Short Term Disability plan does not cover disabilities due to an occupational sickness or injury.

**REHABILITATION AND RETURN TO WORK ASSISTANCE BENEFIT:**

10% of your gross disability payment to a maximum benefit of $250 per week.

In addition, we will make weekly payments to you for 3 weeks following the date your disability ends if we determine you are no longer disabled while:

- you are participating in the Rehabilitation and Return to Work Assistance program; and
- you are not able to find employment.

**OTHER FEATURES:**

Minimum Benefit

**The above items are only highlights of this plan.  For a full description of your coverage, continue reading your certificate of coverage section.**

B@G-STD-2   (1/1/2004)                                                      4

Package:000016 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000016 of 000072

# BENEFITS AT A GLANCE

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you are disabled. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**    January 1, 2004

**POLICY NUMBER:**    591301  021

**ELIGIBLE GROUP(S):**

Management in active employment in the United States with the Employer

**MINIMUM HOURS REQUIREMENT:**

Employees must be working at least 40 hours per week.

**WAITING PERIOD:**

For employees in an eligible group on or before January 1, 2004:  None

For employees entering an eligible group after January 1, 2004:  First of the month coincident with or next following 12 months of continuous active employment

**REHIRE:**

If your employment ends and you are rehired within 12 months, your previous work while in an eligible group will apply toward the waiting period.  All other policy provisions apply.

**CREDIT PRIOR SERVICE:**

Unum will apply any prior period of work with your Employer toward the waiting period to determine your eligibility date.

**WHO PAYS FOR THE COVERAGE:**

Your Employer pays the cost of your coverage.

**ELIMINATION PERIOD:**

90 days

Accumulation Period:  180 days

Benefits begin the day after the elimination period is completed.

**MONTHLY BENEFIT:**

60% of monthly earnings to a maximum benefit of $5,000 per month.

**Your payment may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may have limited coverage under this plan.**

**MAXIMUM PERIOD OF PAYMENT:**

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than age 60 | To age 65, but not less than 5 years |
| Age 60 | 60 months |
| Age 61 | 48 months |

B@G-LTD-1   (1/1/2004)                                              5

Package-000017 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000017 of 000072

| | |
|---|---|
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

No premium payments are required for your coverage while you are receiving payments under this plan.

**REHABILITATION AND RETURN TO WORK ASSISTANCE BENEFIT:**

10% of your gross disability payment to a maximum benefit of $1,000 per month.

In addition, we will make monthly payments to you for 3 months following the date your disability ends if we determine you are no longer disabled while:

- you are participating in the Rehabilitation and Return to Work Assistance program; and
- you are not able to find employment.

**DEPENDENT CARE EXPENSE BENEFIT:**

While you are participating in Unum's Rehabilitation and Return to Work Assistance program, you may receive payments to cover certain dependent care expenses limited to the following amounts:

Dependent Care Expense Benefit Amount:  $350 per month, per dependent

Dependent Care Expense Maximum Benefit Amount:  $1,000 per month for all eligible dependent care expenses combined

**TOTAL BENEFIT CAP:**

The total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 100% of your monthly earnings.  However, if you are participating in Unum's Rehabilitation and Return to Work Assistance program, the total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 110% of your monthly earnings.

**OTHER FEATURES:**

Minimum Benefit

Pre-Existing: 6/12/24

Survivor Benefit

Work Life Assistance Program

**The above items are only highlights of this plan.  For a full description of your coverage, continue reading your certificate of coverage section.**

Package:000018 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000018 of 000072

## CLAIM INFORMATION

## SHORT TERM DISABILITY

### WHEN DO YOU NOTIFY UNUM OF A CLAIM?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Unum written proof of your claim no later than 90 days after your elimination period. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Unum within 15 days of your request, send Unum written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### HOW DO YOU FILE A CLAIM?

You and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Your proof of claim, provided at your expense, must show:

- that you are under the **regular care of a physician**;
- the appropriate documentation of your weekly earnings;
- the date your disability began;
- the cause of your disability;
- the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and
- the name and address of any **hospital or institution** where you received treatment, including all attending physicians.

We may request that you send proof of continuing disability indicating that you are under the regular care of a physician. This proof, provided at your expense, must be received within 45 days of a request by us.

In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.

### TO WHOM WILL UNUM MAKE PAYMENTS?

Unum will make payments to you.

STD-CLM-1   (1/1/2004)                                                    7

Package:000019 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000019 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

### *WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?*

Unum has the right to recover any overpayments due to:

- fraud;
- any error Unum makes in processing a claim; and
- your receipt of deductible sources of income.

You must reimburse us in full.  We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

STD-CLM-2   (1/1/2004)                                        8

Package:000020 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000020 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

## CLAIM INFORMATION

## LONG TERM DISABILITY

### WHEN DO YOU NOTIFY UNUM OF A CLAIM?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner.  Written notice of a claim should be sent within 30 days after the date your disability begins.  However, you must send Unum written proof of your claim no later than 90 days after your elimination period.  If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us.  If you do not receive the form from Unum within 15 days of your request, send Unum written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### HOW DO YOU FILE A CLAIM?

You and your Employer must fill out your own sections of the claim form and then give it to your attending physician.  Your physician should fill out his or her section of the form and send it directly to Unum.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Your proof of claim, provided at your expense, must show:

- that you are under the regular care of a physician;
- the appropriate documentation of your monthly earnings;
- the date your disability began;
- the cause of your disability;
- the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and
- the name and address of any hospital or institution where you received treatment, including all attending physicians.

We may request that you send proof of continuing disability indicating that you are under the regular care of a physician.  This proof, provided at your expense, must be received within 45 days of a request by us.

In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.

### TO WHOM WILL UNUM MAKE PAYMENTS?

Unum will make payments to you.

LTD-CLM-1   (1/1/2004)                                    9

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

Package:000021 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000021 of 000072

Filed                    19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud;
- any error Unum makes in processing a claim; and
- your receipt of deductible sources of income.

You must reimburse us in full.  We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

LTD-CLM-2  (1/1/2004)                                                10

Package:000022 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000022 of 000072

# GENERAL PROVISIONS

## *WHAT IS THE CERTIFICATE OF COVERAGE?*

This certificate of coverage is a written statement prepared by Unum and may include attachments.  It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

## *WHEN ARE YOU ELIGIBLE FOR COVERAGE?*

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period.**

## *WHEN DOES YOUR COVERAGE BEGIN?*

When your Employer pays 100% of the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage.

When you and your Employer share the cost of your coverage under a plan or when you pay 100% of the cost yourself, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your application, if **evidence of insurability** is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or
- voluntarily cancelled your coverage and are reapplying.

An evidence of insurability form can be obtained from your Employer.

## *WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?*

If you are absent from work due to injury, sickness, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment.**

## *ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?*

If you are on a temporary **layoff,** and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

EMPLOYEE-1  (1/1/2004)                                11

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

### WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?

Once your coverage begins, any increased or additional coverage will take effect immediately if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### WHEN DOES YOUR COVERAGE END?

Your coverage under the policy or a plan ends on the earliest of:

- the date the policy or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan.

### WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

### HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?

Unum considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and
- make a fair adjustment of the premium.

<div align="center">

EMPLOYEE-2   (1/1/2004)                                     12

</div>

Package:000024 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000024 of 000072

### HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

### DOES THE POLICY REPLACE OR AFFECT ANY WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE?

The policy does not replace or affect the requirements for coverage by any workers' compensation or state disability insurance.

### DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For purposes of the policy, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.

Package:000025 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000025 of 000072

# SHORT TERM DISABILITY

# BENEFIT INFORMATION

### HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness or injury**; and
- you have a 20% or more loss in weekly earnings due to the same sickness or injury.

You must be under the regular care of a physician in order to be considered disabled.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

### HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?

You must be continuously disabled through your **elimination period.**

If your disability is the result of an injury that occurs while you are covered under the plan, your elimination period is 7 days.

If your disability is the result of a sickness, your elimination period is 7 days.

### CAN YOU SATISFY YOUR ELIMINATION PERIOD IF YOU ARE WORKING?

Yes, provided you meet the definition of disability.

### WHEN WILL YOU BEGIN TO RECEIVE PAYMENTS?

You will begin to receive payments when we approve your claim, providing the elimination period has been met and you are disabled. We will send you a payment weekly for any period for which Unum is liable.

After the elimination period, if you are disabled for less than 1 week, we will send you 1/7th of your payment for each day of disability.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED?

We will follow this process to figure your payment:

STD-BEN-1   (1/1/2004)                                          14

Package:000026 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000026 of 000072

1. Multiply your weekly earnings by 60%.
2. The maximum **weekly benefit** is $500.
3. Compare the answer from Item 1 with the maximum weekly benefit.  The lesser of these two amounts is your **gross disability payment.**
4. Subtract from your gross disability payment any **deductible sources of income.**

The amount figured in Item 4 is your **weekly payment.**

### WHAT ARE YOUR WEEKLY EARNINGS?

"Weekly Earnings" means your average weekly income from your Employer just prior to your date of disability and is computed based on the sum of your Schedule K-1 and W-2 income averaged over the lesser of:

a. the 3 most recent tax years (156 weeks); or

b. the period that you have been an owner, if you have been an owner for less than 3 years.

Schedule K-1 income is derived from the line that refers to "ordinary income (loss) from trade or business activities" received from your Employer.

W-2 income is derived from the income box on your W-2 form that reflects "wages, tips and other compensation" received from your Employer.  It is your total income before taxes.  It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan.

It does not include income received from car, housing or moving allowances, Employer contributions to a qualified deferred compensation plan, or income received from sources other than your Employer.

### WHAT WILL WE USE FOR WEEKLY EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your weekly earnings from your Employer in effect just prior to the date your absence begins.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED AND WORKING?

We will send you the weekly payment if you are disabled and your weekly disability earnings, if any, are less than 20% of your weekly earnings.

If you are disabled and your weekly **disability earnings** are from 20% through 80% of your weekly earnings, you will receive payments based on the percentage of income you are losing due to your disability.  We will follow this process to figure your payment:

1. Subtract your disability earnings from your weekly earnings.
2. Divide the answer in Item 1 by your weekly earnings.  This is your percentage of lost earnings.
3. Multiply your weekly payment as shown above by the answer in Item 2.

This is the amount Unum will pay you for each week.

STD-BEN-2   (1/1/2004)                                                    15

Unum may require you to send proof of your disability earnings each week. We will adjust your weekly payment based on your disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records which we believe are necessary to substantiate your income.

### HOW CAN WE PROTECT YOU IF YOUR DISABILITY EARNINGS FLUCTUATE?

If your disability earnings routinely fluctuate widely from week to week, Unum may average your disability earnings over the most recent 3 weeks to determine if your claim should continue.

If Unum averages your disability earnings, we will not terminate your claim unless the average of your disability earnings from the last 3 weeks exceeds 80% of weekly earnings.

We will not pay you for any week during which disability earnings exceed 80% of weekly earnings.

### WHAT ARE DEDUCTIBLE SOURCES OF INCOME?

Unum will subtract from your gross disability payment the following deductible sources of income:

1. The amount that you receive or are entitled to receive as disability income payments under any:

   - state compulsory benefit act or law.
   - other group insurance plan.

2. The amount that you receive:

   - under the mandatory portion of any "no fault" motor vehicle plan.
   - under Title 46, United States Code Section 688 (The Jones Act).
   - from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

3. The amount that you:

   - receive as disability payments under your Employer's retirement plan.
   - voluntarily elect to receive as retirement payments under your Employer's retirement plan.
   - receive as retirement payments when you reach the later of age 62 or normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefit which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefit under the plan will also be considered as a retirement benefit.

STD-BEN-3   (1/1/2004)                                        16

Package:000028 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000028 of 000072

Filed           19-CI-01707    11/04/2019          Loretta Crady, Hardin Circuit Clerk

Regardless of how the retirement funds from the retirement plan are distributed, Unum will consider your and your Employer's contributions to be distributed simultaneously throughout your lifetime.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan.  Unum will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

Unum will only subtract deductible sources of income which are payable as a result of the same disability.

### WHAT ARE NOT DEDUCTIBLE SOURCES OF INCOME?

Unum will not subtract from your gross disability payment income you receive from, but not limited to, the following:

- 401(k) plans
- profit sharing plans
- thrift plans
- tax sheltered annuities
- stock ownership plans
- non-qualified plans of deferred compensation
- pension plans for partners
- military pension and disability income plans
- credit disability insurance
- franchise disability income plans
- a retirement plan from another Employer
- individual retirement accounts (IRA)
- individual disability income plans
- **salary continuation** or **accumulated sick leave** plans

### WHAT IF SUBTRACTING DEDUCTIBLE SOURCES OF INCOME RESULTS IN A ZERO BENEFIT? (Minimum Benefit)

The minimum weekly payment is: $25.

Unum may apply this amount toward an outstanding overpayment.

### WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR DEDUCTIBLE INCOME BENEFITS?

When we determine that you may qualify for benefits under item(s) 1 in the deductible sources of income section, we will estimate your entitlement to these benefits.  We can reduce your payment by the estimated amounts if such benefits:

- have not been awarded; and
- have not been denied; or
- have been denied and the denial is being appealed.

Your Short Term Disability payment will NOT be reduced by the estimated amount if you:

STD-BEN-4   (1/1/2004)                                    17

Package:000029 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000029 of 000072

Filed           19-CI-01707    11/04/2019          Loretta Crady, Hardin Circuit Clerk

- apply for the disability payments under item(s) 1 in the deductible sources of income section and appeal your denial to all administrative levels Unum feels are necessary; and
- sign Unum's payment option form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or
- that benefits have been denied and all appeals Unum feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

If you receive a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a weekly basis over the time period for which the sum was given. If no time period is stated, the sum will be pro-rated on a weekly basis to the end of the maximum period of payment.

### HOW LONG WILL UNUM CONTINUE TO SEND YOU PAYMENTS?

Unum will send you a payment each week up to the **maximum period of payment.** Your maximum period of payment is 12 weeks during a continuous period of disability.

### WHEN WILL PAYMENTS STOP?

We will stop sending you payments and your claim will end on the earliest of the following:

- when you are able to work in your regular occupation on a **part-time basis** but you choose not to;
- the end of the maximum period of payment;
- the date you are no longer disabled under the terms of the plan, unless you are eligible to receive benefits under Unum's Rehabilitation and Return to Work Assistance program;
- the date you fail to submit proof of continuing disability;
- after 12 months of payments if you are considered to reside outside the United States or Canada. You will be considered to reside outside these countries when you have been outside the United States or Canada for a total period of 6 months or more during any 12 consecutive months of benefits;
- the date your disability earnings exceed the amount allowable under the plan;
- the date you die.

### WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- **occupational sickness or injury,** however, Unum will cover disabilities due to occupational sicknesses or injuries for partners or sole proprietors who cannot be covered by a workers' compensation law.
- intentionally self-inflicted injuries.
- active participation in a riot.

STD-BEN-5  (1/1/2004)                                                        18

Package:000030 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000030 of 000072

- loss of a professional license, occupational license or certification.
- commission of a crime for which you have been convicted.

Your plan will not cover a disability due to war, declared or undeclared, or any act of war.

Unum will not pay a benefit for any period of disability during which you are incarcerated.

### WHAT HAPPENS IF YOU RETURN TO WORK FULL TIME AND YOUR DISABILITY OCCURS AGAIN?

1. If your current disability is related to or due to the same cause(s) as your prior disability for which Unum made a payment:

   Unum will treat your current disability as part of your prior claim and you will not have to complete another elimination period when you are performing any occupation for your Employer on a full time basis for 14 consecutive days or less.

   If you return to work on the 15th day, your current disability will be treated as a new claim. The new claim will be subject to all of the provisions of this plan and you will be required to satisfy a new elimination period.

2. If your current disability is unrelated to your prior disability for which Unum made a payment:

   Unum will treat your current disability as part of your prior claim and you will not have to complete another elimination period when you are performing any occupation for your Employer on a full time basis for less than 1 full day.

Your disability, as outlined above, will be subject to the same terms of the plan as your prior claim.

If you do not satisfy item 1 or 2 above, your disability will be treated as a new claim and will be subject to all of the policy provisions.

If you become entitled to payments under any other group short term disability plan, you will not be eligible for payments under the Unum plan.

STD-BEN-6   (1/1/2004)                                                    19

Package:000031 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000031 of 000072

# SHORT TERM DISABILITY

## OTHER BENEFIT FEATURES

### HOW CAN UNUM'S REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM HELP YOU RETURN TO WORK?

Unum has a vocational Rehabilitation and Return to Work Assistance program available to assist you in returning to work. We will determine whether you are eligible for this program, at our sole discretion. In order to be eligible for rehabilitation services and benefits, you must be medically able to engage in a return to work program.

Your claim file will be reviewed by one of Unum's rehabilitation professionals to determine if a rehabilitation program might help you return to gainful employment. As your file is reviewed, medical and vocational information will be analyzed to determine an appropriate return to work program.

We will make the final determination of your eligibility for participation in the program.

We will provide you with a written Rehabilitation and Return to Work Assistance plan developed specifically for you.

The rehabilitation program may include at our sole discretion, but is not limited to, the following services and benefits:

- coordination with your Employer to assist you to return to work;
- adaptive equipment or job accommodations to allow you to work;
- vocational evaluation to determine how your disability may impact your employment options;
- job placement services;
- resume preparation;
- job seeking skills training; or
- education and retraining expenses for a new occupation.

### WHAT ADDITIONAL BENEFITS WILL UNUM PAY WHILE YOU PARTICIPATE IN A REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM?

We will pay an additional disability benefit of 10% of your gross disability payment to a maximum benefit of $250 per week.

This benefit is not subject to policy provisions which would otherwise increase or reduce the benefit amount such as Deductible Sources of Income.

In addition, we will make weekly payments to you for 3 weeks following the date your disability ends if we determine you are no longer disabled while:

- you are participating in the Rehabilitation and Return to Work Assistance program; and
- you are not able to find employment.

This benefit payment may be paid in a lump sum.

STD-OTR-1   (1/1/2004)                                    20

Package:000032 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000032 of 000072

### WHEN WILL REHABILITATION AND RETURN TO WORK ASSISTANCE BENEFITS END?

Benefits for the Rehabilitation and Return to Work Assistance program will end on the earliest of the following dates:

- the date Unum determines that you are no longer eligible to participate in Unum's Rehabilitation and Return to Work Assistance program; or
- any other date on which weekly payments would stop in accordance with this plan.

Package:000033 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000033 of 000072

STD-OTR-2  (1/1/2004)                                    21

# LONG TERM DISABILITY

## BENEFIT INFORMATION

### HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness or injury;** and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

You must be under the regular care of a physician in order to be considered disabled.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

### HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?

You must be continuously disabled through your **elimination period**. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 90 days.

In addition, if you return to work while satisfying your elimination period, and are no longer disabled, you may satisfy your elimination period within the **accumulation period**. You do not need to be continuously disabled through your elimination period if you are satisfying your elimination period under this provision. If you do not satisfy the elimination period within the accumulation period, a new period of disability will begin.

Your accumulation period is 180 days.

You are not required to have a 20% or more loss in your indexed monthly earnings due to the same injury or sickness to be considered disabled during the elimination period.

### CAN YOU SATISFY YOUR ELIMINATION PERIOD IF YOU ARE WORKING?

Yes. If you are working while you are disabled, the days you are disabled will count toward your elimination period.

LTD-BEN-1   (1/1/2004)                                        22

Package:000034 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000034 of 000072

### WHEN WILL YOU BEGIN TO RECEIVE PAYMENTS?

You will begin to receive payments when we approve your claim, providing the elimination period has been met and you are disabled. We will send you a payment monthly for any period for which Unum is liable.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED?

We will follow this process to figure your payment:

1. Multiply your monthly earnings by 60%.
2. The maximum **monthly benefit** is $5,000.
3. Compare the answer from Item 1 with the maximum monthly benefit. The lesser of these two amounts is your **gross disability payment**.
4. Subtract from your gross disability payment any **deductible sources of income**.

The amount figured in Item 4 is your **monthly payment**.

### WILL UNUM EVER PAY MORE THAN 100% OF MONTHLY EARNINGS?

The total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 100% of your monthly earnings. However, if you are participating in Unum's Rehabilitation and Return to Work Assistance program, the total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 110% of your monthly earnings.

### WHAT ARE YOUR MONTHLY EARNINGS?

"Monthly Earnings" means your average monthly income from your Employer just prior to your date of disability and is computed based on the sum of your Schedule K-1 and W-2 income averaged over the lesser of:

a. the 3 most recent tax years (36 months); or

b. the period that you have been an owner, if you have been an owner for less than 3 years.

Schedule K-1 income is derived from the line that refers to "ordinary income (loss) from trade or business activities" received from your Employer.

W-2 income is derived from the income box on your W-2 form that reflects "wages, tips and other compensation" received from your Employer. It is your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan.

It does not include income received from car, housing or moving allowances, Employer contributions to a qualified deferred compensation plan, or income received from sources other than your Employer.

LTD-BEN-2   (1/1/2004)                                            23

Package:000035 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000035 of 000072

### WHAT WILL WE USE FOR MONTHLY EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED AND WORKING?

We will send you the monthly payment if you are disabled and your monthly **disability earnings**, if any, are less than 20% of your indexed monthly earnings, due to the same sickness or injury.

If you are disabled and your monthly disability earnings are from 20% through 80% of your indexed monthly earnings, due to the same sickness or injury, Unum will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.
2. Compare the answer in Item 1 to your indexed monthly earnings.

If the answer from Item 1 is less than or equal to 100% of your indexed monthly earnings, Unum will not further reduce your monthly payment.

If the answer from Item 1 is more than 100% of your indexed monthly earnings, Unum will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.
2. Divide the answer in Item 1 by your indexed monthly earnings. This is your percentage of lost earnings.
3. Multiply your monthly payment by the answer in Item 2.

This is the amount Unum will pay you each month.

Unum may require you to send proof of your monthly disability earnings at least quarterly. We will adjust your payment based on your quarterly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records which we believe are necessary to substantiate your income.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30 of your payment for each day of disability.

LTD-BEN-3   (1/1/2004)                                            24

Package:000036 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000036 of 000072

### HOW CAN WE PROTECT YOU IF YOUR DISABILITY EARNINGS FLUCTUATE?

If your disability earnings routinely fluctuate widely from month to month, Unum may average your disability earnings over the most recent 3 months to determine if your claim should continue.

If Unum averages your disability earnings, we will not terminate your claim unless the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings.

We will not pay you for any month during which disability earnings exceed 80% of indexed monthly earnings.

### WHAT ARE DEDUCTIBLE SOURCES OF INCOME?

Unum will subtract from your gross disability payment the following deductible sources of income:

1. The amount that you receive or are entitled to receive under:

   - a workers' compensation law.
   - an occupational disease law.
   - any other act or law with similar intent.

2. The amount that you receive or are entitled to receive as disability income payments under any:

   - state compulsory benefit act or law.
   - other group insurance plan.
   - governmental retirement system as a result of your job with your Employer.

3. The amount that you receive or are entitled to receive as disability payments or the amount you receive as retirement payments under:

   - the United States Social Security Act.
   - the Canada Pension Plan.
   - the Quebec Pension Plan.
   - any similar plan or act.

   We will not offset for any amount received by your spouse or dependents.

4. The amount that you:

   - receive as disability payments under your Employer's retirement plan.
   - voluntarily elect to receive as retirement payments under your Employer's retirement plan.
   - receive as retirement payments when you reach the later of age 62 or normal retirement age, as defined in your Employer's retirement plan.

   Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefit which would have been paid if the disability had not occurred.

   Retirement payments will be those benefits which are based on your Employer's

LTD-BEN-4   (1/1/2004)                                    25

Package:000037 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000037 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

contribution to the retirement plan.  Disability benefits which reduce the retirement benefit under the plan will also be considered as a retirement benefit.

Regardless of how the retirement funds from the retirement plan are distributed, Unum will consider your and your Employer's contributions to be distributed simultaneously throughout your lifetime.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan.  Unum will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

5.  The amount that you receive under Title 46, United States Code Section 688 (The Jones Act).

With the exception of retirement payments, Unum will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security retirement income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

### WHAT ARE NOT DEDUCTIBLE SOURCES OF INCOME?

Unum will not subtract from your gross disability payment income you receive from, but not limited to, the following:

- 401(k) plans
- profit sharing plans
- thrift plans
- tax sheltered annuities
- stock ownership plans
- non-qualified plans of deferred compensation
- pension plans for partners
- military pension and disability income plans
- credit disability insurance
- franchise disability income plans
- a retirement plan from another Employer
- individual retirement accounts (IRA)
- individual disability income plans
- no fault motor vehicle plans
- salary continuation or accumulated sick leave plans

### WHAT IF SUBTRACTING DEDUCTIBLE SOURCES OF INCOME RESULTS IN A ZERO BENEFIT? (Minimum Benefit)

The minimum monthly payment is the greater of:

- $100; or
- 10% of your gross disability payment.

Unum may apply this amount toward an outstanding overpayment.

LTD-BEN-5   (1/1/2004)                                            26

Package:000038 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000038 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

### WHAT HAPPENS WHEN YOU RECEIVE A COST OF LIVING INCREASE FROM DEDUCTIBLE SOURCES OF INCOME?

Once Unum has subtracted any deductible source of income from your gross disability payment, Unum will not further reduce your payment due to a cost of living increase from that source.

### WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR DEDUCTIBLE INCOME BENEFITS?

When we determine that you may qualify for benefits under item(s) 1, 2 and 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amounts if such benefits:

- have not been awarded; and
- have not been denied; or
- have been denied and the denial is being appealed.

Your Long Term Disability payment will NOT be reduced by the estimated amount if you:

- apply for the disability payments under item(s) 1, 2 and 3 in the deductible sources of income section and appeal your denial to all administrative levels Unum feels are necessary; and
- sign Unum's payment option form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or
- that benefits have been denied and all appeals Unum feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

If you receive a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

### HOW LONG WILL UNUM CONTINUE TO SEND YOU PAYMENTS?

Unum will send you a payment each month up to the maximum period of payment. Your maximum period of payment is based on your age at disability as follows:

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than age 60 | To age 65, but not less than 5 years |
| Age 60 | 60 months |
| Age 61 | 48 months |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |

Age 67                    18 months
Age 68                    15 months
Age 69 and over           12 months

### WHEN WILL PAYMENTS STOP?

We will stop sending you payments and your claim will end on the earliest of the following:

- during the first 24 months of payments, when you are able to work in your regular occupation on a **part-time basis** but you choose not to;
- after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to;
- if you are working and your monthly disability earnings exceed 80% of your indexed monthly earnings, the date your earnings exceed 80%;
- the end of the maximum period of payment;
- the date you are no longer disabled under the terms of the plan, unless you are eligible to receive benefits under Unum's Rehabilitation and Return to Work Assistance program;
- the date you fail to submit proof of continuing disability;
- after 12 months of payments if you are considered to reside outside the United States or Canada. You will be considered to reside outside these countries when you have been outside the United States or Canada for a total period of 6 months or more during any 12 consecutive months of benefits;
- the date you die.

### WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?

The lifetime cumulative maximum benefit period for all disabilities due to **mental illness** and disabilities based primarily on **self-reported symptoms is 24 months.** Only 24 months of benefits will be paid for any combination of such disabilities even if the disabilities:

- are not continuous; and/or
- are not related.

Unum will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:

1. If you are confined to a **hospital or institution** at the end of the 24 month period, Unum will continue to send you payments during your confinement.

   If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send you payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Unum will send payments during the length of the reconfinement.

LTD-BEN-7   (1/1/2004)                                        28

Package:000040 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000040 of 000072

Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Unum will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

### WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries.
- active participation in a riot.
- loss of a professional license, occupational license or certification.
- commission of a crime for which you have been convicted.
- pre-existing condition.

Your plan will not cover a disability due to war, declared or undeclared, or any act of war.

Unum will not pay a benefit for any period of disability during which you are incarcerated.

### WHAT IS A PRE-EXISTING CONDITION?

You have a pre-existing condition if:

- you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 6 months just prior to your effective date of coverage; and
- the disability begins in the first 24 months after your effective date of coverage unless you have been treatment free for 12 consecutive months after your effective date of coverage.

### WHAT HAPPENS IF YOU RETURN TO WORK FULL TIME WITH THE POLICYHOLDER AND YOUR DISABILITY OCCURS AGAIN?

If you have a recurrent disability, Unum will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under the plan for the period between the end of your prior claim and your recurrent disability; and
- your recurrent disability occurs within 6 months from the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim and will be treated as a continuation of that disability.

LTD-BEN-8   (1/1/2004)                                              29

Package:000041 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000041 of 000072

Filed          19-CI-01707     11/04/2019          Loretta Crady, Hardin Circuit Clerk

Any disability which occurs after 6 months from the date your prior claim ended will
be treated as a new claim.  The new claim will be subject to all of the policy
provisions, including the elimination period.

If you become entitled to payments under any other group long term disability plan,
you will not be eligible for payments under the Unum plan.

**LTD-BEN-9   (1/1/2004)**                                        **30**

Package:000042 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000042 of 000072

Filed          19-CI-01707     11/04/2019          Loretta Crady, Hardin Circuit Clerk

Filed          19-CI-01707     11/04/2019          Loretta Crady, Hardin Circuit Clerk

# LONG TERM DISABILITY

## OTHER BENEFIT FEATURES

### *WHAT BENEFITS WILL BE PROVIDED TO YOU OR YOUR FAMILY IF YOU DIE OR ARE TERMINALLY ILL? (Survivor Benefit)*

When Unum receives proof that you have died, we will pay your **eligible survivor** a lump sum benefit equal to 3 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and
- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate, unless there is none.  In this case, no payment will be made.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

You may receive your 3 month survivor benefit prior to your death if you have been diagnosed as terminally ill.

We will pay you a lump sum amount equal to 3 months of your gross disability payment if:

- you have been diagnosed with a terminal illness or condition;
- your life expectancy has been reduced to less than 12 months; and
- you are receiving monthly payments.

Your right to exercise this option and receive payment is subject to the following:

- you must make this election in writing to Unum; and
- your physician must certify in writing that you have a terminal illness or condition and your life expectancy has been reduced to less than 12 months.

This benefit is available to you on a voluntary basis and will only be payable once.

If you elect to receive this benefit prior to your death, no 3 month survivor benefit will be payable upon your death.

### *HOW CAN UNUM'S REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM HELP YOU RETURN TO WORK?*

Unum has a vocational Rehabilitation and Return to Work Assistance program available to assist you in returning to work.  We will determine whether you are eligible for this program, at our sole discretion.  In order to be eligible for rehabilitation services and benefits, you must be medically able to engage in a return to work program.

Your claim file will be reviewed by one of Unum's rehabilitation professionals to determine if a rehabilitation program might help you return to gainful employment. As your file is reviewed, medical and vocational information will be analyzed to determine an appropriate return to work program.

LTD-OTR-1   (1/1/2004)                                    31

Package:000043 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000043 of 000072

We will make the final determination of your eligibility for participation in the program.

We will provide you with a written Rehabilitation and Return to Work Assistance plan developed specifically for you.

The rehabilitation program may include at our sole discretion, but is not limited to, the following services and benefits:

- coordination with your Employer to assist you to return to work;
- adaptive equipment or job accommodations to allow you to work;
- vocational evaluation to determine how your disability may impact your employment options;
- job placement services;
- resume preparation;
- job seeking skills training; or
- education and retraining expenses for a new occupation.

### WHAT ADDITIONAL BENEFITS WILL UNUM PAY WHILE YOU PARTICIPATE IN A REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM?

We will pay an additional disability benefit of 10% of your gross disability payment to a maximum benefit of $1,000 per month.

This benefit is not subject to policy provisions which would otherwise increase or reduce the benefit amount such as Deductible Sources of Income.  However, the Total Benefit Cap will apply.

In addition, we will make monthly payments to you for 3 months following the date your disability ends if we determine you are no longer disabled while:

- you are participating in the Rehabilitation and Return to Work Assistance program; and
- you are not able to find employment.

This benefit payment may be paid in a lump sum.

### WHEN WILL REHABILITATION AND RETURN TO WORK ASSISTANCE BENEFITS END?

Benefits for the Rehabilitation and Return to Work Assistance program will end on the earliest of the following dates:

- the date Unum determines that you are no longer eligible to participate in Unum's Rehabilitation and Return to Work Assistance program; or
- any other date on which monthly payments would stop in accordance with this plan.

LTD-OTR-2   (1/1/2004)                                          32

Package:000044 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000044 of 000072

### WHAT ADDITIONAL BENEFIT IS AVAILABLE FOR DEPENDENT CARE EXPENSES TO ENABLE YOU TO PARTICIPATE IN UNUM'S REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM?

While you are participating in Unum's Rehabilitation and Return to Work Assistance program, we will pay a Dependent Care Expense Benefit when you are disabled and you:

1. are incurring expenses to provide care for a child under the age of 15; and/or
2. start incurring expenses to provide care for a child age 15 or older or a family member who needs personal care assistance.

The payment of the Dependent Care Expense Benefit will begin immediately after you start Unum's Rehabilitation and Return to Work Assistance program.

Our payment of the Dependent Care Expense Benefit will:

1. be $350 per month, per **dependent**; and
2. not exceed $1,000 per month for all dependent care expenses combined.

To receive this benefit, you must provide satisfactory proof that you are incurring expenses that entitle you to the Dependent Care Expense Benefit.

Dependent Care Expense Benefits will end on the earlier of the following:

1. the date you are no longer incurring expenses for your dependent;
2. the date you no longer participate in Unum's Rehabilitation and Return to Work Assistance program; or
3. any other date payments would stop in accordance with this plan.

LTD-OTR-3   (1/1/2004)                                    33

Package:000045 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000045 of 000072

# OTHER SERVICES

These services are also available from us as part of your Unum Long Term Disability plan.

### IS THERE A WORK LIFE ASSISTANCE PROGRAM AVAILABLE WITH THE PLAN?

We do provide you and your dependents access to a work life assistance program designed to assist you with problems of daily living.

You can call and request assistance for virtually any personal or professional issue, from helping find a day care or transportation for an elderly parent, to researching possible colleges for a child, to helping to deal with the stress of the workplace. This work life program is available for everyday issues as well as crisis support.

This service is also available to your Employer.

This program can be accessed by a 1-800 telephone number available 24 hours a day, 7 days a week or online through a website.

Information about this program can be obtained through your plan administrator.

### HOW CAN UNUM HELP YOUR EMPLOYER IDENTIFY AND PROVIDE WORKSITE MODIFICATION?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Unum.

When this occurs, Unum will reimburse your Employer for the cost of the modification, up to the greater of:

- $1,000; or
- the equivalent of 2 months of your monthly benefit.

This benefit is available to you on a one time only basis.

### HOW CAN UNUM'S SOCIAL SECURITY CLAIMANT ADVOCACY PROGRAM ASSIST YOU WITH OBTAINING SOCIAL SECURITY DISABILITY BENEFITS?

In order to be eligible for assistance from Unum's Social Security claimant advocacy program, you must be receiving monthly payments from us. Unum can provide expert advice regarding your claim and assist you with your application or appeal.

Receiving Social Security benefits may enable:

- you to receive Medicare after 24 months of disability payments;
- you to protect your retirement benefits; and
- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

SERVICES-1   (1/1/2004)                                    34

Package:000046 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000046 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

- helping you find appropriate legal representation;
- obtaining medical and vocational evidence; and
- reimbursing pre-approved case management expenses.

**SERVICES-2  (1/1/2004)**          **35**

Package:000047 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000047 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

# ERISA

## Additional Summary Plan Description Information

**Name of Plan:**
Swift Roofing, Inc

**Name and Address of Employer:**
Swift Roofing, Inc
P.O. Box 1102
Murray, Kentucky
42071

**Plan Identification Number:**
a.  Employer IRS Identification #:  61-0999539
b.  Plan #:  506

**Type of Welfare Plan:**
Disability

**Type of Administration:**
The Plan is administered by the Plan Administrator.  Benefits are administered by the Insurer and provided in accordance with the insurance policy issued to the Plan.

**ERISA Plan Year Ends:**
December 31

**Plan Administrator, Name,**
**Address, and Telephone Number:**
Swift Roofing, Inc
P.O. Box 1102
Murray, Kentucky
42071
(270) 753-5976

Swift Roofing, Inc is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties.  The Plan Administrator may designate Trustees of the Plan, in which case the Administrator will advise you separately of the name, title and address of each Trustee.

**Agent for Service of**
**Legal Process on the Plan:**
Swift Roofing, Inc
P.O. Box 1102
Murray, Kentucky
42071

Service of legal process may also be made upon the Plan Administrator, and any Trustee of the Plan.

ERISA-1   (1/1/2004)                                                    36

Package:000048 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000048 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

**Funding and Contributions:**
The Plan is funded as an insured plan under policy number 591301 021, issued by Unum Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122. Contributions to the Plan are made as stated under "WHO PAYS FOR THE COVERAGE" in the Certificate of Coverage.

## EMPLOYER'S RIGHT TO AMEND THE PLAN

The Employer reserves the right, in its sole and absolute discretion, to amend, modify, or terminate, in whole or in part, any or all of the provisions of this Plan (including any related documents and underlying policies), at any time and for any reason or no reason. Any amendment, modification, or termination must be in writing and endorsed on or attached to the Plan.

## EMPLOYER'S RIGHT TO REQUEST POLICY CHANGE

The Employer can request a policy change. Only an officer or registrar of Unum can approve a change. The change must be in writing and endorsed on or attached to the policy.

## MODIFYING OR CANCELLING THE POLICY OR A PLAN UNDER THE POLICY

The policy or a plan under the policy can be cancelled:

- by Unum; or
- by the Policyholder.

Unum may cancel or modify the policy or a plan if:

- there is less than 75% participation of those eligible employees who pay all or part of their premium for a plan; or
- there is less than 100% participation of those eligible employees for a Policyholder paid plan;
- the Policyholder does not promptly provide Unum with information that is reasonably required;
- the Policyholder fails to perform any of its obligations that relate to the policy;
- fewer than 10 employees are insured under a plan;
- the premium is not paid in accordance with the provisions of this policy that specify whether the Policyholder, the employee, or both, pay(s) the premiums;
- the Policyholder does not promptly report to Unum the names of any employees who are added or deleted from the eligible group;
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger, divestiture, acquisition, sale, or reorganization of the Policyholder and/or its employees; or
- the Policyholder fails to pay any portion of the premium within the 31 day grace period.

If Unum cancels or modifies the policy or a plan for reasons other than the Policyholder's failure to pay premium, a written notice will be delivered to the Policyholder at least 31 days prior to the cancellation date or modification date. The Policyholder may cancel this policy or a plan if the modifications are unacceptable.

ERISA-2  (1/1/2004)                                    37

Package:000049 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000049 of 000072

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify the policy or plan automatically at the end of the grace period. The Policyholder is liable for premium for coverage during the grace period. The Policyholder must pay Unum all premium due for the full period each plan is in force.

The Policyholder may cancel the policy or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Policyholder and Unum agree, the policy or a plan can be cancelled on an earlier date. If Unum or the Policyholder cancels the policy or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the policy or a plan is cancelled, the cancellation will not affect a payable claim.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your group insurance certificate. Unum must receive a completed claim form. The form must be completed by you, your authorized representative, your attending physician and your Employer. If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

## CLAIMS PROCEDURES

Unum will give you notice of the decision no later than 45 days after the claim is filed. This time period may be extended twice by 30 days if Unum both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies you of the circumstances requiring the extension of time and the date by which Unum expects to render a decision. If such an extension is necessary due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days within which to provide the specified information. If you deliver the requested information within the time specified, any 30 day extension period will begin after you have provided that information. If you fail to deliver the requested information within the time specified, Unum may decide your claim without that information.

If your claim for benefits is wholly or partially denied, the notice of adverse benefit determination under the Plan will:

- state the specific reason(s) for the determination;

- reference specific Plan provision(s) on which the determination is based;

- describe additional material or information necessary to complete the claim and why such information is necessary;

- describe Plan procedures and time limits for appealing the determination, and your right to obtain information about those procedures and the right to sue in federal court; and

- disclose any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or state that such information will be provided free of charge upon request).

ERISA-3   (1/1/2004)                                    38

Package:000050 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000050 of 000072

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

You have 180 days from the receipt of notice of an adverse benefit determination to file an appeal. Requests for appeals should be sent to the address specified in the claim denial. A decision on review will be made not later than 45 days following receipt of the written request for review. If Unum determines that special circumstances require an extension of time for a decision on review, the review period may be extended by an additional 45 days (90 days in total). Unum will notify you in writing if an additional 45 day extension is needed.

If an extension is necessary due to your failure to submit the information necessary to decide the appeal, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days to provide the specified information. If you deliver the requested information within the time specified, the 45 day extension of the appeal period will begin after you have provided that information. If you fail to deliver the requested information within the time specified, Unum may decide your appeal without that information.

You will have the opportunity to submit written comments, documents, or other information in support of your appeal. You will have access to all relevant documents as defined by applicable U.S. Department of Labor regulations. The review of the adverse benefit determination will take into account all new information, whether or not presented or available at the initial determination. No deference will be afforded to the initial determination.

The review will be conducted by Unum and will be made by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate. In the case of a claim denied on the grounds of a medical judgment, Unum will consult with a health professional with appropriate training and experience. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate. If the advice of a medical or vocational expert was obtained by the Plan in connection with the denial of your claim, Unum will provide you with the names of each such expert, regardless of whether the advice was relied upon.

A notice that your request on appeal is denied will contain the following information:

- the specific reason(s) for the determination;

- a reference to the specific Plan provision(s) on which the determination is based;

- a statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or a statement that such information will be provided free of charge upon request);

- a statement describing your right to bring a civil suit under federal law;

Package:000051 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000051 of 000072

- the statement that you are entitled to receive upon request, and without charge, reasonable access to or copies of all documents, records or other information relevant to the determination; and

- the statement that "You or your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State Insurance regulatory agency".

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## YOUR RIGHTS UNDER ERISA

As a participant in this Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

### Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

ERISA-5   (1/1/2004)                                                    40

### Enforce Your Rights

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, if, for example, it finds your claim is frivolous.

### Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## DISCRETIONARY ACTS

In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

ERISA-6   (1/1/2004)                                    41

Filed          19-CI-01707     11/04/2019          Loretta Crady, Hardin Circuit Clerk

# GLOSSARY

**ACCUMULATION PERIOD** means the period of time from the date disability begins during which you must satisfy the elimination period.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**DEDUCTIBLE SOURCES OF INCOME** means income from deductible sources listed in the plan which you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

**DEPENDENT** means:

- your child(ren) under the age of 15; and
- your child(ren) age 15 or over or a family member who requires personal care assistance.

**DISABILITY EARNINGS** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your maximum capacity.

**ELIMINATION PERIOD** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Policyholder, and includes any division, subsidiary or affiliated company named in the policy.

**EVIDENCE OF INSURABILITY** means a statement of your medical history which Unum will use to determine if you are approved for coverage. Evidence of insurability will be at Unum's expense.

**GAINFUL OCCUPATION** means an occupation that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

80% of your indexed monthly earnings, if you are working; or
60% of your indexed monthly earnings, if you are not working.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

GLOSSARY-1   (1/1/2004)                               42

Filed          19-CI-01707     11/04/2019          Loretta Crady, Hardin Circuit Clerk

Package:000054 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000054 of 000072

**GROSS DISABILITY PAYMENT** means the benefit amount before Unum subtracts deductible sources of income and disability earnings.

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INDEXED MONTHLY EARNINGS** means your monthly earnings adjusted on each anniversary of benefit payments by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-U) is published by the U.S. Department of Labor. Unum reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-U.

Indexing is only used as a factor in the determination of the percentage of lost earnings while you are disabled and working and in the determination of gainful occupation.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

**INSURED** means any person covered under a plan.

**LAW, PLAN OR ACT** means the original enactments of the law, plan or act and all amendments.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIMITED** means what you cannot or are unable to do.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

- **For Short Term Disability:**

  **MAXIMUM CAPACITY** means, based on your restrictions and limitations, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

- **For Long Term Disability:**

  **MAXIMUM CAPACITY** means, based on your restrictions and limitations:

  - during the first 24 months of disability, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

GLOSSARY-2   (1/1/2004)                                          43

Package:000055 of 000072

Presiding Judge: HON. KEN HOWARD (609287).

Package : 000055 of 000072

- beyond 24 months of disability, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

**MAXIMUM PERIOD OF PAYMENT** means the longest period of time Unum will make payments to you for any one period of disability.

**MENTAL ILLNESS** means a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability. Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders, or disorders relatable to stress. If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a disability.

**MONTHLY BENEFIT** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

**MONTHLY EARNINGS** means your gross monthly income from your Employer as defined in the plan.

**MONTHLY PAYMENT** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**OCCUPATIONAL SICKNESS OR INJURY** means a sickness or injury that was caused by or aggravated by any employment for pay or profit.

- For Short Term Disability:

   **PART-TIME BASIS** means the ability to work and earn between 20% and 80% of your weekly earnings.

- For Long Term Disability:

   **PART-TIME BASIS** means the ability to work and earn between 20% and 80% of your indexed monthly earnings.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the policy.

**PHYSICIAN** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Unum will not recognize you, or your spouse, children, parents or siblings as a physician for a claim that you send to us.

**PLAN** means a line of coverage under the policy.

GLOSSARY-3  (1/1/2004)                                    44

Package:000056 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000056 of 000072

**PRE-EXISTING CONDITION** means a condition for which you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines for your condition during the given period of time as stated in the plan.

**RECURRENT DISABILITY** means a disability which is:

- caused by a worsening in your condition; and
- due to the same cause(s) as your prior disability for which Unum made a Long Term Disability payment.

**REGULAR CARE** means:

- you personally visit a physician as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and
- you are receiving the most appropriate treatment and care which conforms with generally accepted medical standards, for your disabling condition(s) by a physician whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

**RETIREMENT PLAN** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions. Retirement Plan includes but is not limited to any plan which is part of any federal, state, county, municipal or association retirement system.

- For Short Term Disability:

**SALARY CONTINUATION OR ACCUMULATED SICK LEAVE** means continued payments to you by your Employer of all or part of your weekly earnings, after you become disabled as defined by the Policy. This continued payment must be part of an established plan maintained by your Employer for the benefit of all employees covered under the Policy. Salary continuation or accumulated sick leave does not include compensation paid to you by your Employer for work you actually perform after your disability begins. Such compensation is considered disability earnings, and would be taken into account in calculating your weekly payment.

- For Long Term Disability:

**SALARY CONTINUATION OR ACCUMULATED SICK LEAVE** means continued payments to you by your Employer of all or part of your monthly earnings, after you become disabled as defined by the Policy. This continued payment must be part of an established plan maintained by your Employer for the benefit of all employees covered under the Policy. Salary continuation or accumulated sick leave does not include compensation paid to you by your Employer for work you actually perform after your disability begins. Such compensation is considered disability earnings, and would be taken into account in calculating your monthly payment.

GLOSSARY-4   (1/1/2004)                                45

Package:000057 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000057 of 000072

Filed          19-CI-01707      11/04/2019          Loretta Crady, Hardin Circuit Clerk

**SELF-REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

**SICKNESS** means an illness or disease.  Disability must begin while you are covered under the plan.

**SURVIVOR, ELIGIBLE** means your spouse, if living; otherwise your children under age 25 equally.

**TREATMENT FREE** means you have not received medical treatment, consultation, care or services including diagnostic measures, or taken prescribed drugs or medicines for the pre-existing condition.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE,  US** and **OUR** means Unum Life Insurance Company of America.

**WEEKLY BENEFIT** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

**WEEKLY EARNINGS** means your gross weekly income from your Employer as defined in the plan.

**WEEKLY PAYMENT** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**YOU** means an employee who is eligible for Unum coverage.

GLOSSARY-5  (1/1/2004)                     46

Package:000058 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000058 of 000072

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: 1-800-858-6843
Fax: 207-575-2354
www.unum.com



August 29, 2019

HEVERSTOCK, BELL & PITMAN
MICHAEL M. PITTMAN
211 SOUTH 12TH ST
PO BOX 1075
MURRAY, KY 42071

RE:     Swift, Greg
        Claim Number:      14351864
        Policy Number:     591301
        Unum Life Insurance Company of America

Dear Sir or Madam:

Unum Life Insurance Company of America (referred to as Unum) completed the appeal review on your client, Greg Swift's Long Term Disability claim.

Please read the following pages carefully, as they will help you understand how we reached our decision.

This letter includes the following:

- Initial Claim Decision

- The Appeal Decision

- Information that Supports the Appeal Decision

- Our Response to Your Concerns

- Policy Provisions that apply to the Appeal Decision

- Next Steps Available

1242-03      UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

EXHIBIT
C

Package:000059 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000059 of 000072

Claimant Name: Swift, Greg                                                    August 29, 2019
Claim Number: 14351864                                                        Page 2 of 8

### Initial Claim Decision:

The Benefits Center determined that Mr. Swift had a medical condition that limited him from
performing the material and substantial duties of his regular occupation. His Long Term
Disability benefits were approved beginning January 20, 2018.

While it was determined that Mr. Swift was unable to perform the duties of his occupation; under
the terms of the Long Term Disability policy he must also have a 20% or more loss in his
monthly earnings in order to be disabled.

In a letter sent to Mr. Swift on January 26, 2018, he was notified that his benefit could be
impacted by other income, specifically K1 earnings. In subsequent letters, The Benefit Center
explained to Mr. Swift that as an owner of the company, Unum requires financial information to
ensure that he continues with the required earnings loss as indicated in the definition of
disability. The Benefit Center continued to request information to clarify his income and review
his eligibility for ongoing disability benefits.

The Benefit Center reviewed profit and loss statements that were provided. The information
specific to these statements showed an ongoing loss of more than 20%. Based on this
information benefits continued; however, his 2018 income still needed to be reconciled using his
W2 and K1 earnings. In January 2019, The Benefit Center requested additional tax information,
including Mr. Swift's 2018 W2 and schedule K1.

The Benefit Center received this information in April 2019. The tax records provided
documented that Mr. Swift's average monthly income through 2018, based on his W2 and K1
earnings, was no less than $19,455.33 per month. The Benefit Center determined that Mr. Swift
would not have been eligible for Long Term Disability benefits because he never sustained a
20% loss as required by the policy.

Because Long Term Disability benefits were paid in error, Mr. Swifts claim was overpaid by
$102,890.23.

### Appeal Decision:

We have determined that the decision was correct. Mr. Swift did not experience an earnings
loss as required by the policy. Because he did not have a 20% loss in his monthly earnings he
was not disabled as defined by the policy.

Because Mr. Swift did not meet the definition of disability, he would not have been eligible for
Long Term Disability benefits. Mr. Swift's claim was paid in error and he currently owes Unum
$102,890.23.

### Information that Supports our Decision:

We received your request to appeal The Benefit Center's decision on July 31, 2019. In your
letter of appeal, you note that Mr. Swift has not been able to work since November 2017 and the
earnings he receives are generated based upon his passive ownership in the business. You
provided an affidavit from a CPA noting that the income listed on the K-1 is not income from any
work activity for the company.

Package:000060 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000060 of 000072

Claimant Name: Swift, Greg                                    August 29, 2019
Claim Number: 14351864                                        Page 3 of 8

On appeal, we completed a thorough review of Mr. Swift's claim file, including the benefits paid, his continuing income as reported on his W2 and K1, policy provisions, and overpayment amount.

We do not dispute that Mr. Swift was unable to perform the demands of his regular occupation. Under the terms of his Long Term Disability policy, in addition to being unable to perform his occupation, Mr. Swift is required to have a 20% loss in his indexed monthly earnings to be eligible to receive Long Term Disability benefits.

> "Indexed Monthly Earnings means your monthly earnings adjusted on each anniversary of benefit payments…"

> > When reviewing Mr. Swift's earnings as of the date he became disabled, this would be prior to any anniversary for an adjustment.

> "Monthly Earnings means your gross monthly income from your Employer as defined in the plan."

The plan defines monthly earnings as:

> "'Monthly Earnings' means your average monthly income from your Employer just prior to your date of disability and is computed based on the sum of your Schedule K-1 and W-2 income averaged over the lesser of:

> a. the 3 most recent tax years (36 months); or

> b. the period that you have been an owner, if you have been an owner for less than 3 years.

> Schedule K-1 income is derived from the line that refers to "ordinary income (loss) from trade or business activities" received from your Employer.

> W-2 income is derived from the income box on your W-2 form that reflects "wages, tips and other compensation" received from your Employer. It is your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan.

> It does not include income received from car, housing or moving allowances, Employer contributions to a qualified compensation plan, or income received from sources other than your Employer."

Mr. Swift became disabled in 2017. We concluded that his "Monthly Earnings" as defined by the policy are $21,847.08. This calculation was based on income received from his schedule K-1 and W-2 averaged over the 3 most recent tax years prior to his disability (2014, 2015, 2016). As of the date benefits would have begun (January 30, 2018), the policy would require him to have earnings of $17,477.66 (80% of his monthly earnings) or less to be considered disabled as defined by the policy.

We understand that Mr. Swift is a 23% shareholder of Swift Roofing, Inc. and is entitled to his share of the company profits. Mr. Swift's 2018 schedule K-1 reports ordinary business income in

Claimant Name: Swift, Greg
Claim Number: 14351864

August 29, 2019
Page 4 of 8

box 1 totaling $233,464.00. When allocating this over the 12 months in 2018, his K1 earnings averaged $19,455.33 per month. W2 earnings reflect additional 2018 income.

Because his schedule K1 is used in calculating Mr. Swift's pre-disability earnings, Unum considers any ongoing K1 income received from his employer to calculate his ongoing monthly earnings. His average monthly income of $19,455.33 as reflected on his K-1 in 2018 is greater than $17,477.66 and therefore, Mr. Swift continued to earn greater than 80% of his pre-disability earnings. Mr. Swift never sustained a 20% or more loss in his monthly earnings beyond the date benefits began on January 30, 2018.

Mr. Swift's claim was approved and he received Long Term Disability benefits totaling $102,890.23 for the period from January 30, 2018 through March 31, 2019. The policy states that benefits begin after the policy Elimination Period has been met and if you are disabled. As Mr. Swift did not have the required 20% loss in earnings, he was not disabled under the terms of the plan and benefits should not have begun. Long Term Disability benefits have been overpaid.

Mr. Swift is receiving Social Security Disability Insurance (SSDI) benefits. We did not request a copy of the Social Security file. In our review, we have considered the facts available to us about your client's Social Security award and all the information in Unum's claim file, including any applicable policy provisions. Our decision differs from that of the Social Security Administration (SSA) because Mr. Swift's continued monthly earnings exceed the amount allowable under his Long Term Disability policy. The SSA may not have a similar earnings loss requirement that takes into consideration Mr. Swift's K-1 earnings.

**Our Response to Your Concerns**

You report that Mr. Swift's K1 earnings were not related to any work he performed for the company, but were a passive return on his ownership, interest, and investment in Swift Roofing Inc. You state that the passive K-1 earnings he receives are not reflective of his active participation in the trade or business and were distributed to him as a business owner.

> We agree that Mr. Swift was not working for his employer in 2018, and that his income as reflected on his schedule K-1 is not considered disability earnings as defined in the policy.

> Per the definition of disability, the policy requires that Mr. Swift has a 20% or more earnings loss in monthly earnings.

> His "Monthly Earnings" as defined by the policy includes schedule K-1 earnings from the line that refers to "ordinary income (loss) from trade or business activities". This is in reference to how the income is labeled on the K-1 and is not intended to reflect that Mr. Swift actually be active in the business.

> The schedule K1 is used when calculating Mr. Swift's "Monthly Earnings". The K1 includes his shareholder profit from his employer, Swift Roofing Inc. This income was used to calculate his pre-disability monthly earnings and the same K-1 earnings are used in determining his continuing income beyond the date he became disabled.

> Because Mr. Swift did not meet the definition of disability once the elimination period was satisfied, we cannot apply any of the benefit provisions including "How much will

Filed          19-CI-01707     11/04/2019          Loretta Crady, Hardin Circuit Clerk

Claimant Name: Swift, Greg
Claim Number: 14351864

August 29, 2019
Page 5 of 8

Unum pay if you are disabled and working" which is the only place where disability earnings is referenced.

Unum completed a full and fair review on appeal. As outlined above, Mr. Swift's ongoing income is in excess of the amount allowable under the plan. Because Mr. Swift does not have a 20% or more loss in his monthly earnings beyond the date benefits began, he is not considered disabled as defined by the policy. His benefits were not payable as of January 30, 2018 and the decision to close his claim was appropriate.

As outlined above, Mr. Swift owes Unum $102,890.23 due to benefits that were paid in error. Under the terms of the policy, Unum has the right to recover any overpayment due to an error.

**Policy Provisions that Apply to the Appeal Decision:**

We relied upon your client's policy when making our decision, including the provisions listed below, and the Company reserves its right to enforce other provisions of the policy.

### HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in weekly earnings due to the same sickness or injury.

You must be under the regular care of a physician in order to be considered disabled.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

Package:000063 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000063 of 000072

Claimant Name: Swift, Greg
Claim Number: 14351864

August 29, 2019
Page 6 of 8

**INDEXED MONTHLY EARNINGS** means your monthly earnings adjusted on each anniversary of benefit payments by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase remain the same, but will never decrease.

The Consumer Price Index (CPI-U) is published by the U.S. Department of Labor. Unum reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-U.

Indexing is only used as a factor in the determination of the percentage of lost earnings while you are disabled and working and in the determination of gainful occupation.

**MONTHLY EARNINGS** means your gross monthly income from your Employer as defined in the plan.

### WHAT ARE YOUR MONTHLY EARNINGS?

"Monthly Earnings" means your average monthly income from your Employer just prior to your date of disability and is computed based on the sum of your Schedule K-1 and W-2 income averaged over the lesser of:

a.  the 3 most recent tax years (36 months); or

b.  the period that you have been an owner, if you have been an owner for less than 3 years.

Schedule K-1 income is derived from the line that refers to "ordinary income (loss) from trade or business activities" received from your Employer.

W-2 income is derived from the income box on your W-2 form that reflects "wages, tips and other compensation" received from your Employer. It is your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan.

### WHEN WILL YOU BEGIN TO RECEIVE PAYMENTS?

You will begin to receive payments when we approve your claim, providing the elimination period has been met and you are disabled. We will send you a payment monthly for any period for which Unum is liable.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud;
- any error Unum makes in processing a claim; and
- your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Package:000064 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000064 of 000072

Claimant Name: Swift, Greg
Claim Number: 14351864

August 29, 2019
Page 7 of 8

Unum will not recover more money than the amount we paid you.

Your client's policy provides a time limit to file a legal action:

### WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

The contractual limitation provided above will expire on April 11, 2022, which is 3 years from the Benefit Center's decision letter of April 11, 2019.

**Next Steps Available:**

You are entitled to receive, upon request and without charge, reasonable access to or copies of all documents, records or other information that are relevant to your client's benefit determination.

If your client disagrees with this decision, you have a right to bring a civil suit under section 502 (a) of the Employee Retirement Income Security Act of 1974.

Your client or their plan may have other voluntary alternative dispute resolution options, such as mediation. You can learn what options are available to you by contacting your client's U.S. Department of Labor office and state insurance regulatory agency.

If you have questions about your client's claim or this process, please call our Contact Center at 1-800-858-6843, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. Any of our experienced representatives have access to your claim documentation and will be able to assist you.

If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 41319.

| | |
|---|---|
| Spanish: To obtain assistance in Spanish, call 1-800-858-6843. | Para obtener asistencia en Español, llame al 1-800-858-6843. |
| Chinese: To obtain assistance in Chinese, call 1-800-858-6843. | （中文）：如果需要中文的帮助，请拨打这个号码：1-800-858-6843。 |
| Tagalog: To obtain assistance in Tagalog, call 1-800-858-6843. | Kung kailangan ninyo ng tulong sa Tagalog, tumawag sa 1-800-858-6843. |
| Navajo: To obtain assistance in Dine, call 1-800-858-6843. | Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne` 1-800-858-6843. |

Sincerely,

*Shane L Knox*

Shane L Knox

Package:000065 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000065 of 000072

Fax Server 07          8/29/2019 1:33:05 PM   PAGE   9/009   Fax Server
Filed          19-CI-01707    11/04/2019          Loretta Crady, Hardin Circuit Clerk

Claimant Name: Swift, Greg                                    August 29, 2019
Claim Number: 14351864                                        Page 8 of 8

Lead Appeals Specialist

Package:000066 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000066 of 000072

# Haverstock, Bell & Pitman, LLP
### Attorneys at Law

Gary R. Haverstock
Gerald Bell
Michael M. Pitman

Offices: 211 & 213 South 12th Street
Murray, KY 42071

Telephone: (270) 753-1694
Facsimile: (270) 753-2053
www.haverstocklaw.com

Mailing Address:
P.O. Box 1075
Murray, KY 42071

July 30, 2019

The Benefit Center Appeals Unit
P.O. Box 9548
Portland, ME 04104-5058

SENT VIA U.S. MAIL AND FACSIMILE TRANSMISSION – 270-575-2354

RE:   Insured:      Greg Swift
      Claim No.:    14351864
      Policy No.:   591301
      Unum Life Insurance Company of America

Dear Unum Appeals Unit:

This letter is submitted on behalf of Greg Swift, a policyholder under the above-referenced policy, appealing the decision issued by Unum dated April 11, 2019 denying the claim for long-term disability benefits and the accompanying request for a refund of an alleged overpayment.

Mr. Swift is a 61-year old individual who has an ownership interest in a business venture known as Swift Roofing, Inc. Due to a diagnosis of oral cavity squamous cell carcinoma, Mr. Swift submitted an application for coverage under the Swift Roofing, Inc., policy providing long-term disability benefits.

Benefits were afforded to Mr. Swift, beginning January 30, 2018, based upon a calculation of his prior gross monthly earnings, as defined under the policy, of $21,847.08 per month. Mr. Swift was determined to meet the eligibility requirements for disability benefits and benefits were paid to him at the rate of $10,000.00 per month through April 2019. At that juncture, Unum issued a letter to Mr. Swift asserting that he no longer met the definition of disabled under the policy qualifying him for long-term disability benefits. Specifically, Unum asserted that Mr. Swift's income/earnings, after January 1, 2018, totaled $19,455.33 per month. As a result, Unum has taken the position that he did not met the applicable earnings loss percentage ratio qualifying him for continued long-term disability benefits. Mr. Swift appeals this decision and asserts that he is entitled to continue to receive long-term disability benefits under the terms and provisions of the policy and is not obligated to refund benefits previously issued to him to Unum.

### Disability Policy Terms

Pursuant to the policy issued by Unum, the long-term disability benefits are afforded if an individual is determined to be disabled.  The policy provides, in pertinent part, as follows:

> You are disabled when Unum determines that:
>
> > You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
> >
> > You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

The policy provides, with regard to calculation of monthly earnings, the following:

> "Monthly earnings" means your average monthly income from your Employer just prior to your date of disability and is computed based on the sum of your Schedule K-1 and W-2 income averaged over the lesser of:
>
> > a.   The three most recent tax years (36 months); or
> > b.   The period that you have been an owner, if you have been an owner for less than three years.
>
> Schedule K-1 income is derived from the line that refers to "ordinary income (loss) from trade or business activities" received from your Employer.

The plan definitions, in the glossary section, define the following terms applicable to long-term disability coverage:

> "Disability earnings" means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your maximum capacity;
>
> "Monthly earnings" means your gross monthly income from your Employer as defined in the plan.

The policy provides that monthly disability payments will end at the point in time an individual's "monthly disability earnings"[1] exceed 80% of the indexed monthly earnings. Specifically, under the provision of the policy dealing with termination of disability benefits, the policy states:

---

[1] "Disability earnings" are defined to mean earnings received when an individual is both disabled and working.

We will stop sending you payments and your claim will end on
the earliest of the following:

… if you are working and your monthly disability earnings
exceed 80% of your indexed monthly earnings, the date your
earnings exceed 80%.

In reviewing the letter of April 11, 2019, it appears that the decision to terminate the long-term disability benefits was based solely on what Unum asserts to be income Mr. Swift receives from his employer. Specifically, Unum states:

In order to remain disabled under your policy's definition of
disability you must have a 20% or more loss in your continued
monthly earnings from your Employer as defined above.

Mr. Swift asserts that as of January 1, 2018, due to his medical condition, he is not able to earn an income from his Employer. As a result, the position asserted by Unum to deny benefits under the policy is not justified.

Prior to November 2017, Mr. Swift was actively employed by Swift Roofing, Inc. As a result of his active employment, he received monthly income both W-2 income and K-1 income as an actively employed employee and in his capacity as a co-owner providing services to this venture. Mr. Swift, due to his medical disability, was and remains unable to continue his work as of November 1, 2017. For calendar year 2018, the payments he received from the K-1 were simply a passive return on his ownership interest and investment in Swift Roofing, Inc. The post-January 1, 2018 earnings were not and do not meet the definition of disability earnings nor the definition of monthly earnings from his employer. Specifically, the term monthly earnings, under the policy, is defined as "gross monthly income from your employer as defined in the plan". The plan states that the claimant is entitled to a monthly payment if the claimant is disabled and your "monthly disability earnings, if any, are less than 20% of your indexed monthly earnings".

Following Mr. Swift's disability, his K-1 income was generated based upon his passive ownership in the business. The K-1 income for tax year 2018 and thereafter was a distribution to him as a business owner as opposed to ordinary income from his active participation in the trade or business prior to his disability. As a result, this post-disability K-1 income does not meet the definition of monthly disability earnings since it is not income generated from an employer. The K-1 income for tax year 2018 should be excluded from consideration in determining the percentage loss of income. Accordingly, Mr. Swift continues to meet the eligibility rules for payment of the long-term disability benefit and this appeal is submitted on his behalf requesting that the benefits be reinstated and the request for repayment of an alleged overpayment be withdrawn.

Package:000069 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000069 of 000072

Filed          19-CI-01707   11/04/2019          Loretta Crady, Hardin Circuit Clerk

Page | 4

Attached hereto is an opinion letter from his CPA regarding the K-1 income for tax year 2018.  Your prompt response to this appeal would be appreciated.

Respectfully Submitted,

Michael M. Pitman

MMP/dd

Enclosures

cc:    Mr. Greg Swift

Package:000070 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000070 of 000072

Page | 5

<div align="center">

## Verification

</div>

The undersigned, Greg Swift, confirms I have reviewed the foregoing and the statements contained therein are true and correct to the best of my knowledge and belief.

Greg Swift

**STATE OF KENTUCKY**
**COUNTY OF** ___Hardin___

Subscribed and sworn to before me this __24th__ day of ____July____, 2019, by Greg Swift.

My Commission Expires: ___4/25/22___

NOTARY PUBLIC

Package:000071 of 000072

Presiding Judge: HON. KEN HOWARD (609287)

Package : 000071 of 000072

### AFFIDAVIT

Affiant, Jason Anderson, CPA, having first been duly sworn states as follows:

1.     Affiant is a Certified Public Accountant licensed in the Commonwealth of Kentucky.  The Affiant has prepared and/or reviewed tax returns for Greg Swift for tax years 2017 and 2018.  Affiant is aware of the taxable income received by Greg Swift for tax year 2017 and his taxable income for tax year 2018.

2.     For tax year 2017 and prior tax years, Greg Swift was an active employee with an entity known as Swift Roofing of Elizabethtown, Inc.  As a result of his active employment with the company, Mr. Swift received income both as W-2 income and K-1 income.  Mr. Swift worked on a full-time basis with the company.

3.     Due to his medical disability, Mr. Swift was unable to perform services or receive earnings from any work activity for tax year 2018.  To the best of the knowledge of Affiant, Mr. Swift remains unable to return to any type of gainful employment due to his medical condition at the present time.

4.     For tax year 2018, the tax return shows K-1 ordinary business income of $233,464.00.  However, as indicated in the statements, this was attributable to a shareholder return on an investment and not active participation in the business.  It is Affiant's opinion that the K-1 income distributed to Greg Swift for tax year 2018 was distributed to him simply based upon his ownership interest in the venture and not distributed to him due to any active work he provided.  As a result, it is Affiant's opinion that, while the income is listed on the K-1, it is not income from any type of earnings Greg Swift received for work activity for the company.

Further Affiant sayeth not.

_____
Jason Anderson, CPA

STATE OF KENTUCKY
COUNTY OF CALLOWAY

Subscribed and sworn to before me this ____ day of _____, 2019, by Jason Anderson, CPA.

My Commission Expires: 1-28-23

_____
NOTARY PUBLIC

KIM JAMES
NOTARY PUBLIC
ID NO. 614669
MY COMMISSION
EXPIRES
01/28/2023
STATE AT LARGE KY



U.S. POSTAGE PITNEY BOWES

ZIP 42701 $ 014.25°
02 4M
0000339327 NOV 04 2019



CERTIFIED MAIL®

LORETTA CRADY
HARDIN CIRCUIT COURT
HARDIN COUNTY JUSTICE CENTER
120 EAST DIXIE AVENUE
ELIZABETHTOWN, KY 42701-1975

9414 7266 9904 2969 4489 97
RETURN RECEIPT REQUESTED

UNUM LIFE INSURANCE CO
SERVE: CORPORATION SERVICE CO
421 W MAIN ST
FRANKFORT, KY 40601
19CI1707          JL

LINE 1.